IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

**RECEIVED**

APR 0 6 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

|  |  |
|---|---|
| WALTER LOUIS INGRAM, | ) |
| Reg. No. 28648-037 | ) |
| Plaintiff, | ) |
|  | ) |
| vs. | ) |
|  | ) |
| ALBERTO GONZALEZ, , et al., | ) |
| Defendants, | ) |

Civil Action No.: 06-1243 (EGS)

## PLAINTIFF'S MOTION IN OPPOSITION TO THE DEFENDANTS MOTION TO DISMISS OR IN THE ALTERNATIVE, TO TRANSFER VENUE.

Now comes the Plaintiff, Walter L. Ingram, in Opposition to the Defendants Motion to Dismiss or, Alternative, to transfer venue.

## PROCEDURAL HISTORY

On June, 2006, pursuant to the Civil Rights Act, 42 U.S.C. &1983 Plaintiff Ingram filed the above-captioned Complaint in this Honorable Court seeking relief based on the named Defendants refusal to remove erroneous information from the Plaintiff's Presentence Investigation Report (PSR) classifying Ingram "Career Offender", to delete the same from Ingram's institutional records maintained by the Bureau of Prison (BOP) that added an additional three (3) points, the use of a prior conviction beyond the fifteen (15) year window period pursuant to USSG & 4A1.2(e)(1) that should not have been counted to assess an additional three points, and the assessment of additional two (2) points for the false assertion Ingram committed the instant offense less than two (2) years after release of imprisonment, and that a new updated PSR be made reflecting the deletions and corrections.

1

**A. Defendants Motion For Dismissal Pursuant To Federal Rules Of Civil Procedure, Rule 12(b)(1), and Rule 12(b)(6) is Without Merit.**

In the instant case, pursuant to the Federal Rules of Civil Procedure, Rule 12(b)(1), and 12(b)(6), the defendants move for dismissal of the complaint arguing a claim of lack of subject matter jurisdiction, and failure to state a claim upon which relief can be granted premised on the presumption the defendants are sued as individual officers or employees of an agency under the Privacy Act as opposed to the agency itself.

Although, Plaintiff Ingram bears the burden of persuasion to establish subject-matter jurisdiction by a preponderance of the evidence. McNutt v. Gen. Motors Acceptance Corp. of Indiana, 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests whether a plaintiff has properly stated a claim upon which relief can be granted. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed. 2d 90 (1974), overruled on other grounds by Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed. 2d 396 (1982). However, the explicit language of Federal Rule of Civil Procedure 8(a)(2) provides that the complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief..." See also Conley, 355 U.S. at 47, 78 S.Ct. 99; U.S. ex rel. Harris v. Bernard, 275 F.Supp. 2d 1, 5 (D.D.C. 2003). And the complainant need not plead the prima facie elements); see also Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1114 (D.C. Cir. 2000). And the Court must also assumes the truth of the allegations made in the complaint and construes them favorably to the pleader. Artis v. Greenspan, 158 F.3d 1301, 1305-06 (D.C. Cir. 1998). Because subject matter jurisdiction focuses on the Court's power to hear a claim, the Court must give the plaintiff's factual allegations closer scrutiny when reviewing a motion to dismiss for lack of subject matter jurisdiction than reviewing a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6). Mut. Pharm. Co., Inc. v. Pfizer, 307 F.Supp. 2d 88, 92 (D.D.C. 2004) (citing Macharia v. United States, 334 F.3d 61, 64, 68-69 (D.C. Cir. 2003); Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F.Supp. 2d 9, 13 (D.D.C. 2001)). Also in

2

determining whether the plaintiff has met this burden, the Court may look to materials beyond the pleadings. Herbert v. Nat'L Acad. of Sciences 974 F.2d 192, 197 (D.C. Cir. 1992).

Thus, in deciding a motion to dismiss under Rule 12(b)(6), the court is bound to consider all well-pleaded facts as true, and to draw all reasonable inferences in favor of the nonmovant. Scheuer, 416 U.S. at 236, 94 S.Ct. 1683; U.S. ex. rel Harris, 275 F.Supp. 2d at 5. Since "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. " Sinclair v. Kleidienst, 711 F.2d 291, 293 (D.C. Cir. 1983) (quoting Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed. 2d 80 (1957).

**The Complaint Against The Individually Name Defendant.**

Legally Ingram complaint cannot be dismissed pursuant to either Rule 12(b)(1), or Rule 12(b)(6), predicated on the defendants argument the "Privacy Act" only allows lawsuits against the agency and not against individual defendants. Since Ingram complaint is fact filed against the federal agencies, and the individuals defendants are named as no more than figureheads, acting as representatives of the Federal government interest with authority, and the responsibility to create records. And to act as the custodians of those very records at issue. See; Grandison v. Warden, Maryland House of Correction, 423 F.Supp. 112, (D.Md. 1976) (quoting West v. State of Louisiana, 478 F.2d 1026 (5th Cir. 1973),

> The court further holds that it has the authority to order the expungement of petitioner's records against all persons who maintain custody of such records. *The Warden is named as respondent solely because he is petitioner's custodian. He is simply a figurehead who represents the interest of the State. In West v. State of Louisiana, 478 F.2d 1026 (5th Cir. 1973), the court held that petitioner's habeas corpus petition should not be dismissed although he named the state as respondent rather than the warden. The reasoned:*

> *The purposes of the statutory requirement are equally well served whether the immediate custodian is named as respondent or is identified elsewhere in the petition.* Some courts have held it necessary to name the immediate custodian

3

as respondent on the ground that it is he who must certify the cause of detention and respond to the court's order.... In fact, however, the role of the warden in habeas corpus litigation is limited to performing the perfunctory duties of producing the prisoner for a hearing or of releasing the prisoner should the petition be granted. Indeed, the response to the petition is customarily prepared by the state's attorney..... **The warden had no interest in the proceeding independent of that of the State, (478 F.2d at 1030).**

The role of a federal court in habeas corpus cases would be undermined if the court, in providing suitable remedies, were restricted to those acts which only the Warden could carry out. **The interest at stake is that of the State and not of the individual Warden; consequently, it is the responsibility of the State to see that this court's order is carried out by all of its agencies.**

*[423 F.Supp. 115-116:]*

          Thus while it may be legally true that an action filed under the Privacy Act only allows lawsuits against the agency, and not against individual defendants. The naming of the individual defendants, Alberto Gonzalez, Attorney General of the United States, William F. Henry, Chief Probation Officer, John W. Skozilas, Jr, Supervising Probation Officer, and T. R. Sniezek, Warden FCI Elkton, Ohio, representatives of different branches of Federal Government agencies with no interest in the proceedings independent of the Government was proper. Since the agencies are properly sued by the naming of the individuals defendants of those separate agencies whom are no more than mere figureheads of those agencies, however, the interest at stake is that of the United States Government, and not that of the individual defendants who just happen to be given the responsibility as the Government representatives to see that the agencies maintain accurate records. Grandison supra, citing West v. United States, supra.,.

          Clearly, the complaint contain a short and plain statement of the claims showing Ingram is entitled to relief against those separate branches of agencies represented by the individual defendants named as figureheads, that satisfies the burden of persuasion to establish subject-matter jurisdiction by a preponderance of the evidence, rendering the motion to dismiss

4

by the defendants under Rule 12(b)(1), and  Rule 12(b)(6) to be  without merit.

**B. Defendants Assertions That The Court Lacks Subject Matter Jurisdiction Over Plaintiff's Claim Is Without Merit.**

Relying on the holdings of <u>Bernard v. United States Dep't of Defense</u>, supra 362 F.Supp. 2d at 278 (D.D.C. 2005); <u>Armstrong v. Bureau of Prisons</u>, supra 976 F.Supp. at  21 (D.D.C. 1997), the defendants claim's the Court lacks subject matter jurisdiction over Ingram's asserted "Privacy Act" claims as time barred, because  Privacy Act claims must be brought within two years to pursuant 5 U.S.C. & 552a(g)(5). And according to the defendants, the statute of limitations begins to accrue when plaintiff knows or should know of the alleged violation. [1] And if a suit is not filed within two years, the court lacks subject matter jurisdiction over the claim asserted. 5 U.S.C. & 552a(g)(5).

In the case sub judice, the defendants premises there argument of lack of subject matter jurisdiction solely based on the September 13, 2005 letter, the defendant, John W. Skozilas, Jr. had written to Plaintiff Ingram informing Ingram's his PSR was prepared in October, 1992, and because Ingram was sentenced in December, 1992 the USPO would do nothing. The Defendants presumes  that evidence somehow establishes Ingram was aware at those times, if not before, of the erroneous information contained in his PSR, or had a reason to believe, or know it would remained in his PSR, as a result the Court lacks subject matter jurisdiction to adjudicate such claims some 14 years after he was sentenced because Ingram failed to timely pursue those claims under the Privacy Act within two years.

The Plaintiff Ingram asserts that the fact a reviewing the court must accept as true all the factual allegations contained in the complaint when reviewing a motion to dismiss,

---

[1] *With that precept in mind considering the two-year statute of limitations nonetheless would run from the date the plaintiff knew or should have known of the maintenance of inaccurate records. <u>Diliberti v. United States</u>, 817 F.3d 1259, (7th Cir. 1987) at 1263-64, see also: <u>Chung v. United States Dep't of Justice</u>, 333 F.3d 273, 278 n. (D.C. Cir. 2003), Chung determined that a rebuttable presumption in favor of equitable tolling of the statute of limitations applies to a Privacy Act claim. Id. at 277-78. Equitable tolling applies most commonly when a plaintiff, despite all due diligence, cannot obtain vital information bearing on the existence of his claim. Id. at 278 (citing <u>Currier v. Radio Free Europe</u>, 159 F.3d 1363, 1367 (D.C. Cir. 1998). Consequently a Privacy Act claim filed after the two year period is not automatically time barred; equitable tolling of the statute of limitations may occur.*

Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed. 2d 517 (1993).

Defendants arguments ignores the fact that, during the December, 1992 sentencing proceeding, the District Court ruled Ingram was not classified or characterized as a "Career Offender" under the sentencing guidelines pursuant to USSG &4B1.2.,. Thus, its simply not reasonable to presuppose the mere preparation in October, 1992 of Ingram's PSR, and Ingram subsequent sentencing in December, 1992, suffice as sufficient to reasonably draw an inference Ingram knew or should have known his PSR would still contain erroneous information after he was sentenced, and would later end up in the Federal Bureau of Prisons records classifying Ingram as a "Career Offender", despite the fact Ingram was not given a copy of the PSR after sentencing in December, 1992. Considering the evidence with that precept in mind, it is more reasonable to conclude he was not aware in 1992 of the erroneous information in his PSR, that would later ended up in the BOP records in the light of the district court's ruling, Ingram did not qualify as Career Offender. Instead an reasonably inference could be draw from those facts, Ingram only became aware after the BOP erroneously classified Ingram Career Offender in scoring his custody classification points P.S. 5100.07 in 2005.

That classification resulted in Ingram filing an initial complaint with Unit Manager, Ms. Marylou Burns, and Case Manager, Ms. Newland in 2005 concerning those records erroneously classifying Ingram as "Career Offender" in scoring his custody classification points P.S. 5100.07 that prohibited Ingram from participating in any transfer and furlough programs, etc.,. And to be followed by Ingram subsequently appealing Burns, and Newland's refusal to resolve the erroneous information to the defendant, T.R. Sniezek, Warden ("who in turn forward a letter in 2005 to the Probation Office, defendant John W. Skozilas, Jr.) regarding Ingram's initial complaint that challenged the erroneous information contained in his PSR. Who in turn by letter dated September 13, 2005, responded that there was nothing the agency could or would do regarding correcting the erroneous information in Ingram's Presentence Investigation Report (PSR).

6

Thus, in light of those facts the evidence establishes Ingram became aware of the erroneous information in the PSR, and BOP records in 2005, and Ingram timely filed his complaint in June, 2006, was well within two years period.

## C. The Defendants Argues That The Privacy Act is not the Proper Avenue to Challenge the Accuracy of, or to Seek an Amendment to, the PSR is Without Merit.

Since Ingram's PSR (PSR) was prepared by the United States Probation Office ("USPO") for sentencing a criminal defendant, and is part of the sealed docket in a criminal case. Defendants claim Ingram's must pursuant to Rule 32 of the Federal Rules of Criminal Procedure challenge inaccurate information in the PSR. Since according to the defendants reliance's on Prows v. United States Department of Justice, No Civ. A.87-1657, 1989 WL39288, at *6 (D.D.C. 1989), Rule 32(f) authorizes a defendant to challenge the PSR by filing objections with the USPO within fourteen days after receiving the PSR. As a result the defendants argues the Privacy Act is not the proper avenue to seek an amendment to the PSR based on the District Court holding in Thomas v. U.S. Parole Comm'n, No. Civ.A. 94-0174, 1994 WL 487139, at *6 (D.D.C. Sept. 7, 1994);

> Plaintiff... is in effect, by means of the Privacy Act, trying to collaterally attack the contents of his (PSR). Plaintiff... originally had the opportunity to challenge the accuracy of the pre-sentence report before the judge who sentenced him. To extent that [plaintiff] is using the Privacy Act to challenge the accuracy of the [PSR], he is getting a second, and this Court believes, absent extenuating circumstances, impermissible bite at the apple. The orderly administration of justice should require that attacks of this kind should be first presented to the sentencing court.

However, Ingram case is completely distinguishable from the facts found in Thomas v. U.S. Parole Comm'n, by virtue of the fact, Thomas had both a reason an opportunity to challenge the accuracy of his pre-sentence report contents. Ingram on the other hand had no reasons to challenge his PSR because the trial judge that sentenced Ingram ruled he was not a "Career Offender" pursuant to USSG &4B1.2 contrary to the PSR. However,

7

Ingram did not learned until 2005, the defendant USPO failed to amended the erroneous information in the PSR. As a result extenuating circumstances do exist in the case sub judice, because the defendants not only failed to comply with the sentencing court's order, it failed to comply with 5 U.S.C. & 552a (g) (1) of the United States Code that provides :

> [w]henever any agency, [A] makes a determination ... not to amend an individual's record in accordance with his request, or fails to make such review in conformity with that subsection; [B] refuses to comply with an individual request under subsection (d)(1) of this section; [C] fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual, or; [D] fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual, the individual may bring a civil action against the agency, and the district courts of the United States shall have jurisdiction in the matters under the provisions of this subsection.

5 U.S.C. & 552a (g) (1). also see; Sellers v. Bureau of Prisons, 959 F.2d 307 (CA DC 1992), permitting a civil action if an agency fails to maintain any records concerning any individual, and consequently a determination is made which is adverse to the individual. [2] Id at 310.

      Ingram's case is somewhat, if not identical to the situation occurring in Sellers, since the issue in the Sellers appeal involved an argument that Sections (e)(5), (g)(1)(C), and (g)(4) of the Privacy Act, Section (e)(5) provides that such agency that keeps a system of records must maintain all records with such accuracy, relevance, timeliness and completeness as is reasonably necessary to assure fairness to the individual in a

---

[2] And section (g)(4) provides that in any action brought under section (g)(1)(C), in which the Court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable for actual damages sustained by the individual not less than $1, 000 as well as litigation costs and attorneys fees 5 U.S.C. & 552a(g)(4).

determination. 5 U.S.C. &552a(e), Sellers, supra, at 310.

Like Sellers, the complaint sub judice,  Ingram argued that the Defendants have
maintained and used an erroneous Presentence Investigation Report that classified Ingram
"Career Offender" to make determinations adverse to Ingram in its scoring of custody
classification points P.S. 5100.07, which prohibited Ingram from participating in any transfer
and furlough programs, etc., as set forth in his complaint in violation of Section (5)(g)(1)(C), and
(g)(4) of the Act. Despite, the fact the challenged information ("Career Offender") in Ingram's
files was capable of being verified by the agencies it did not satisfy the requirements of the
Privacy Act, simply because the defendants allowed the PSR and the BOP records to remain
the same, although they were inconsistent with the United States District Court Judge judgment
that concluded Ingram was not a Career Offender. See <u>Sellers v. Bureau of Prisons</u>, 959 F.2d
were the D.C. Court of Appeals held;

> Because the challenged information in Mr. Sellers files was capable of
> being verified, the agency did not satisfy the requirement of the Privacy
> Act simply by noting on his files that he disputed some of the information
> the files contained. Therefore we remand for the district court to determine
> whether the Bureau of Prisons and the Parole Commission willfully or
> intentionally failed to maintain Mr. Sellers records in accordance with
> Section (e)(5) and (g)(1)(C) of the act. See <u>White v. Office of Personal
> Management</u>, 787 F.2d 660, (D.C. Cir. 1986) (in action for damages under
> Privacy Act, court must determine whether standard articulated under
> section (g)(1)(C) has been met.)

at 312).

In the case sub judice, the agencies did not even attempt to satisfy the
requirements of the Privacy Act as was done in <u>Sellers</u> by noting on the files Ingram disputed
some of the information the files contained. An attempt the Sellers Court concluded did not to
satisfy the requirement of Privacy Act. Instead the defendants willfully or intentionally failed to
maintain Ingram's records in accordance with the provisions of Section (e)(5) and (g)(1)(C) of
the Act, despite the fact there files along with the PSR was inconsistent with the United States

District Court Judge sentencing judgment that Ingram was not a Career Offender.

Thus, Plaintiff Ingram contends that the Defendants reliance's on <u>Thomas v. U.S. Parole Comm'n,</u> and <u>Hurley v. BOP,</u> No. Civ.A. 95-1696, 1995 WL 631149, at *2 (1st Cir. Oct. 24, 1995) that Ingram was required to challenge the PSR under Rule 32 at the time of sentencing is misplaced. Since unlike the situations that occurred in Thomas and Hurley, extenuating circumstances exist authorizing Ingram to seek relief under the provisions of Section 552a (g)(1) of Title 5, because the defendants records (PSR/BOP) created prior to sentencing are in direct conflict with the December, 1992 sentencing court's judgment declaring that Ingram was not a Career Offender. And Ingram had no reason to assume the defendants had indeed failed to correct or amend the PSR to be consistent with the sentencing court's judgment. As a result contrary to the defendants assertions, Ingram complaint was properly filed pursuant to the Privacy Act challenging the accuracy of both the PSR, and the BOP's records created from that erroneous PSR used to classify Ingram a Career Offender in Ingram's classification custody scoring points, and seek to monetary damages and attorney fees, because the evidence required under section (g)(1)(C) has been met.

**D. and E: The Defendants Claims Plaintiff Fails to Establish a Cause Of under the Privacy Act is Without Merit.**

The Plaintiff Ingram contends that when a motion to dismiss under Rule 12(b)(6) tests not whether a plaintiff will ultimately prevail on the merits, but only whether the plaintiff has properly stated a claim for which he is entitled to relief. <u>Woodruff v. DiMario,</u> 197 F.R.D. 191, 193 (D.D.C. 2000). A complaint should not be dismissed for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of [his] claim for relief. <u>Conley v. Gibson,</u> 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed. 2d 80 (1957).

Here the Defendants erroneously asserts the complaint fails to establish a cause of action under the Privacy Act, because the Inmate central Record System ("ICRS") maintained by the BOP is a system of records within the definition found in the Privacy Act, and Plaintiff's PSR, which is a document prepared by the USPO for sentencing purposes, is

maintained in the ICRS. Thus argues the defendants. Plaintiff does not have a cause of action under the Privacy Act, because the BOP has specifically exempted the ICRS from the amendment and accuracy provisions of the Privacy Act. Such an argument borders on the line of being completely frivolous, since it is immaterial whether the BOP maintains a court document in its ICRS or elsewhere. That documents (PSR) unlike any other internal document of the BOP, remains subject to amendment, and the accuracy provisions of the Privacy Act, independent of any exemptions created by the BOP as to its own internal records generated in carrying out its functions as an agency of the Federal government.

      The Defendants, then claims even if Plaintiff Ingram had a cause of action under the Privacy Act, he would fail to establish its elements, because accord to the defendants a Plaintiff with a lawsuit against an agency under the Privacy Act has the burden of establishing the four elements (1) that there was an adverse determination; (2) that the agency failed to maintain plaintiff's records with the degree of accuracy necessary to ensure fairness in the determination made; (3) that the agency's failure to do so was the proximate cause of the adverse determination, and (4) that the agency acted intentionally and willfully. citing as authority, Armstrong, 976 F. Supp. at 22 (D.D.C. 1997). Defendants claim Ingram cannot establish any of the elements for asserting a claim under the Privacy Act pertaining to the first requirement that there be an adverse action. Since according to the defendants reliance on Sandin v. Conner, 515 U.S. 472, 486 (1995); Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Montanye v. Haymes, 427 U.S. 238, 245 (1976); Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976), it is a well-established that an inmate has no constitutional right to a particular security classification after he is incarcerated. And inmates do not have a protected liberty interest in their security classifications. Slezak v. Evatt, 21 F.3d 590, 595 (4th Cir.), cert. denied, 513 U.S. 846 among others.

      However, an examination of those cases reveals they merely involved inmates contesting there classification to disciplinary segregation confinement, or there transfer from one maximum security prison in one State to another State's maximum security prison.

Sandin v. Conner, for instant involved an inmate complaint of being placed in disciplinary segregated confinement; Olim v. Wakinekona, an inmate interstate transfer from a Hawaii prison to a State prison in the State of California; Meachum v. Fano, inmate not being entitled to a hearing before being transferred to prison with conditions not favorable to prisoner; and Moody v. Daggett, parole violator not being entitled to a prompt parole hearing when warrant issued and lodged with the prison of his confinement.

On the other hand, the Plaintiff Ingram case is distinguishable from those case for the reasons found in Woodall v. Federal Bureau of Prison, 432 F.3d 235, (C.A.3 (N.J.) 2005);

> Carrying out a sentence through detention in a CCC is very different from carrying out a sentence in an ordinary penal institution. More specifically, in finding that Woodall's action was properly brought under 2241, we determine that placement in a CCC represents more than a simple transfer. Woodall's petition crosses the line beyond a challenge to, for example, a garden variety prison transfer.
>
> The criteria for determining CCC placement are instrumental in determining how a sentence will be "executed." CCCs and similar facilities, unlike other forms of incarceration, are part of the phase of the corrections process focused on reintegrating an inmate into society. The relevant statute specifically provides that a prisoner should be placed in a CCC or similar institution at the end of a prison sentence to "Afford the prisoner a reasonable opportunity to adjust to and prepare for ... re-entry into the community." 18 U.S.C. & 3624. CCCs thus satisfy different goals from other types of confinements. We have noted the relatively lenient policies of CCCs as compared to more traditional correctional facilities. CCC pre-release programs often include an employment component under which a prisoner may leave on a daily basis to work in the community. Inmates may be eligible for weekend passes, overnight passes, or furloughs. See United States v. Hillstrom, 988 F.2d 448 [3d Cir. 1993); see also United States v. Latimer, 991 F.2d 1509, 1513 (9th Cir. 1993) (emphasizing that community confinement is "qualitatively different" from confinement in a traditional prison).

(432 F.3d 242-243):

Given these considerations, the defendants use of the erroneous information (Career Offender) found in Ingram's PSR in its determination or classification consideration for transfer to a CCC (Community Confinement Center) was tantamount to an adverse determination, because that document was inconsistent with the judgment of the sentencing court, that had concluded during sentencing that Ingram was not a Career Offender. 2] The defendants (agencies) clearly failed to maintain plaintiff's records with the degree of accuracy necessary to ensure fairness in the determination made, because they did not amend or correct the PSR that classified Ingram as a Career Offender, despite the sentencing judge ruled in December, 1992, that Ingram was not a Career Offender. 3.] And the agencies failure to do so was the proximate cause of the adverse determination to deny Ingram transfer to a Community Confinement Center, furloughs, etc.,, because they used non qualifying conviction to classify Ingram as a Career Offender, and to assessed (3) three points against Ingram for a conviction in violation of USSG & 4A1.2(e)(1), and an additional (2) two points based upon its conclusion Ingram committed the instant offense less than two (2) years after release of imprisonment. 4] the agencies acted intentionally and willfully, is clearly establish by Ingram's complaint Exhibit, whereas, the defendant USPO on September 13, 2005 stated it would not change Ingram PSR.

## F. The Defendants Claims That The Prison Litigation Reform Act (PLRA) Blocks Plaintiff's Claims. And That Plaintiff Has Failed to Exhaust His Administrative Remedies Under the PLRA Are Without Merit.

Although, exhaustion has been made a precondition by the U.S. Supreme Court to prisoner's suit under the Prison Litigation Reform Act of 1995, as amended, 42 U.S.C. & 1997e(a) ("PLRA"), requiring a prisoner to exhaust "such administrative remedies as are available" before filing a lawsuit. Nonetheless, failure to exhaust is an affirmative defense that the Defendants has the burden of proving. Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004).

In the instant case, defendants offer of proof is premise on its (Exhibit B),' the

13

Declaration of Rosalind Bingham [3] that the BOP records indicate Ingram has not exhausted administrative remedies by filing an appeal regarding the error in his PSR. Bingham affidavit, however, is improper, since it is not based on a personal knowledge of the events giving rise to the underlying litigation. Beyah v. Coughlin, 789 F.2d 986, 989 (2d Cir. 1986) (noting attorney affidavit was improper because it was not based on personal knowledge of the events giving rise to the underlying litigation. Since Bingham affidavit does not serve to refute Ingram complaint of filing an institutional complaint with representatives of the BOP, Unit Manager, Ms. Marylou Burns, and Case Manager, Ms. Newland who destroyed the initial complaint, and informed Ingram there was no need to pursue the matter they would resolve it. Nor does Bingham affidavit refute Ingram claims when those individuals failed to resolve the issue, Ingram appealed to T.R. Sniezek the (Warden), whom advised Ingram as Burns and Newland had previously, that there was no need to pursue the complaint, because his office would resolve the matter by forwarding a letter to the Probation Office regarding Ingram initial complaint. However, neither the defendants, Warden, USPO, or any of the other defendants informed Ingram of his right to purse further administrative review, after the defendant, USPO responded that there was nothing it could or would do, since Ingram's PSR was created in October, 1992, and when sentenced in December, 1992, Ingram never challenge the information within the PSR. Instead the defendants leaded Ingram to believe as a result of the USPO September 13, 2005 letter informing Ingram its office would do noting to correct or amend the PSR as result he no further administrative remedies. Plaintiff Ingram's Exhibit (A).

As a result, Plaintiff avers that although exhaustion is a precondition to the prisoner's suit, prison officials may not take unfair advantage of the exhaustion requirement, however, and a remedy becomes "unavailable" if prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from

_____

[3]. However, Bingham's Affidavit merely states that she is a Paralegal Specialist for the Federal Bureau of Prisons, with access to inmate records, including administrative remedies data and public information data, and the procedures an inmate must follow pursuant to Title 28 C.F.R. §,§ 542.10-.19 in order to exhaust the Bureau of Prisons' administrative remedies.

14

exhausting. Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002); Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004).

Clearly, Ingram complaint establishes that the defendants affirmative misconduct prevented Ingram from exhausting in normal way, because they destroyed his complaints, and deceived Ingram into believing they would resolve the matter, and Ingram need not pursue the matter any further. Thus, the record keeping agencies, BOP, and USPO violated the acts statutory mandate by not informing him of his right to further administrative review. Harper v. Kobelinski, 589 F.2d 721 (D.C. Cir. 1978) at 723. Those circumstances understandingly lead Ingram an uncounseled prisoner to fail to grieve in the normally required way. Giano v. Goord, 380 F.3d 670, (2d Cir. 2004) at 677-78.

Bingham affidavit does not refute Ingram claims that the defendants lead Ingram to believe they were going to resolve the matters, and did not inform him of any other available remedies after destroying his complaints. Instead, Bingham affidavit does no more than aver she found no appeals in the BOP files of Ingram exhausting his administrative remedies. As a result the defendants motion to dismiss lacks an Affidavit disputing Plaintiff factual claims alleged in his complaint that all the factual allegations contained in the complaint when reviewing a motion to dismiss must be accepted by a reviewing court as true. Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed. 2d 517 (1993).

## G. Defendants Request for an Alternative, that the Court Should Grant the Government's Motion to Transfer the Case Pursuant to 28 U.S.C. 1404(a).

Defendant although, acknowledging that pursuant to 5 U.S.C. &552a(g)(5), a civil action to enforce the provisions of the Privacy Act may be "brought in the District of Columbia, the Defendants seeks to transfer Ingram complaint to the District of Maryland. However, as the moving party the defendants bears the burden of demonstrating that transfer pursuant to Section 1404(a) is warranted. DeLoach, 132 F.Supp 2d at 24; Sheraton Operating Corp. v. Just Corporate Travel, 984 F.Supp. 22, 25 (D.D.C. 1997). And the district court has

15

broad discretion in the determination of such motions, and should "adjudicate such motions according to an 'individualized, case by case consideration of convenience and fairness.'" Gemological Institute of America, Inc. v. Thi-Dai Phan, 145 F.Supp.2d 68 (D.D.C. 2001) at 71

Defendants contends under Title 28 U.S.C. & 1404(a), even if a case is filed in a jurisdiction where venue is proper, a court may transfer the case to any other district where in might have been brought '[f]or the convenience of parties and witnesses, [and] in the interest of justice.'" citing Boers v. United States, 133 F. Supp. 2d 64, 65 (D.D.C. 2001) (quoting 28 U.S.C. & 1404(a)) (other citations omitted). In deciding whether transfer is warranted, the court considers several factors, including:

> [T]he convenience of the witnesses of plaintiff and defendant; ease of
> access to sources of proof; availability of compulsory processes to
> compel the attendance of unwilling witnesses; the amount of expense for
> the willing witnesses; the relative congestion of the calendars of potential
> transferor and transferee courts; and other practical aspects of
> expeditious and conveniently conducting a trial.

Boers, 133 F.Supp. 2d at 65 (citation omitted).

Thus, the defendants argues that if this case has merit it would properly belong in the United States District Court for the District of Maryland where Plaintiff is incarcerated or where he alleges the events occurred. And concludes 28 U.S.C. & 1404(a) permits the case to be transferred, though outright dismissal is the preferred disposition that promotes judicial economy. However, Plaintiff contends that the mere tendering of what Section 1404(a) of Title 28 of the United States Code provides, does not suffice as proof the defendants has satisfied the burden it bears of demonstrating that transfer pursuant to Section 1404(a) is warranted. To the contrary the defendants must actually set forth facts that there exist a warrant of convenience of the witnesses of both plaintiff and defendant case of access to sources of proof; the availability of compulsory process to compel the attendance of unwilling witnesses; the amount of expensive for willing witnesses; the relative congestion of the calenders of potential transferor and transferee courts; and other practical aspects of expeditious and

16

conveniently conducting a trial.

Plaintiff Ingram avers there exist no evidence of a need for convenience for any witnesses on a matter that can be resolved without the calling of witnesses, since the defendants have not even attempted to dispute the factual allegations alleged in Plaintiff's complaint. Further, this Court has held that "[i]n assessing the convenience to the parties of the two potentially proper venues, the court recognizes that the plaintiff's choice of forum is usually accorded 'substantial deference' in the venue analysis." Reiffin v. Microsoft Corp., 104 F.Supp. 2d 48, (D.D.C. 2000) at 52.

In conclusion, Plaintiff Ingram avers analyzed with that precept in mind the defendants has failed to satisfied its burden as the moving party. Thus for these reasons and others to be raised at the hearing the Defendant prays that this Honorable Court Order:

A. That the Defendants Motion to Dismiss or Alternative Motion to Transfer be Denied.

B. That the erroneous information in Plaintiff Ingram PSR classifying him as a Career Offender be ordered deleted, and that an order be issued requiring the Defendants USPO create a new PSR without the erroneous information.

C. That an order be issued ordering the Defendants BOP delete the three (3) points assessed against Ingram for the conviction that did not qualify under USSG & 4A1.2(e)(1), and the two (2) additional points assessed against Ingram based on Ingram committed the offense he is incarcerated less than 2 years after being released from prison.

D. That this Court grant the monetary relief required under the Privacy Act.

E. That a Evidentiary Hearing be held.

F. That this Court grant such additional relief as the nature of this case may require.


Respectfully submitted

Walter L. Ingram #28648-037, Pro se
Community Correction Center
E. Monument Street
Baltimore, Maryland 21205

17

## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY** that on this _2_ day of _April_ , 2007, a copy of the foregoing Motion was mailed, first-class postage prepaid, to Michelle N. Johnson, Assistant United Attorney, United States Attorney's Office, Civil Division, 555 4th Street, N. W. Room E4212, Washington, D.C. 20530.

WALTER L. INGRAM #28648-037
Community Correction Center
4601 E. Monument Street
Baltimore, Maryland 21205

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLOMBIA

WALTER LOUIS INGRAM.

     Plaintiff

V.                       CIVIL NO. 06-01243 (EGS)

ALBERTO GONZALEZ. et. al

     Defendants

## AFFIDAVIT OF WALTER LOUIS INGRAM

    I, Walter Louis Ingram , hereby depose and say: I am a Plaintiff in the matter Walter L. Ingram v. Albert Gonzalez, et al., Civil Action No. 06-1243 (EGS).

    1. In December, 1992, I, Walter Louis Ingram was sentenced in the United States District Court for the District of Maryland, for Conspiracy to Distribute and Possession with Intent to Distribute Cocaine, Aid & Abet, 21 U.S.C. & 846 and 18 U.S.C. & 2, and the trial judge ruled that I (Walter Louis Ingram) was not characterizes or classified as Career Offender.

    2. Once I learned of the erroneous information was contained in my Presentencing Investigation Report (hereinafter PSR), and not removed, I filed an initial complaint in 2005 to a Ms. Marylou Burns, the Unit Manager, and to Ms. Newland, my Case Manager at FCI Elkton, Lisbon, Ohio.

    3. I was informed by the Unit Manager, Ms. Burns, who shattered my initial complaint, that "we" did not need to pursue the issue concerning the "erroneous information contained in my PSR, and BOP records that classified me (Walter L. Ingram) as Career Offender)", because the issue would be resolved.

    4. When the matter was not resolved by Ms. Burns, I appealed to the Warden,

1

I, WALTER L. INGRAM, HEREBY AFFIRM, UNDER THE PENALTIES OF PERJURY, THAT THE CONTENTS OF THIS AFFIDAVIT ARE TRUE AND CORRECT, TO THE BEST OF MY INFORMATION, KNOWLEDGE AND BELIEFS.

Date 4-2- ° 7

Walter L. Ingram, # 28648-037
Community Corrections Center
4601 E. Monument Street
Baltimore, MD. 21205