IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WALTER LOUIS INGRAM, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | )    Civil Action No.: 06-1243 (EGS) <br> ) |
| ALBERTO GONZALEZ, et al., | ) <br> ) |
| Defendants. | ) <br> ) |

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS,
OR IN THE ALTERNATIVE, TO TRANSFER VENUE**

    Defendants, Alberto Gonzalez, Attorney General of the United States, William F. Henry, John W. Skozilas, and T.R. Sniezek, hereby file their reply in further support of their motion to dismiss, or alternatively, transfer venue. Despite proffering several arguments in opposing Defendants' motion, plaintiff has failed to successfully refute Defendants' arguments that dismissal, or alternatively, transfer, of this action is warranted. For this reason, Defendants' motion to dismiss should be granted.

**ARGUMENT**

**I.    THE INDIVIDUALLY NAMED DEFENDANTS MUST BE DISMISSED.**

    Plaintiff has not offered any rational arguments why the individually named Defendants should not be dismissed. While agreeing that it is "legally true that an action filed under the Privacy Act only allows lawsuits against the agency, and not against individual defendants . . . [,]" Plaintiff states that it "was proper" to name the individual defendants. Plaintiff's Motion in Opposition to the Defendants' Motion to Dismiss or in the Alternative, to Transfer Venue ("Pl.'s Opp'n") at 4. This is so, according to Plaintiff's logic, because he was permitted to "show[ ] [he] is entitled to

relief against those separate branches of agencies represented by the individual defendants named as figureheads . . . ." Id. Plaintiff's arguments are not well-founded and he does not dispute any of the cases cited by Defendants that establish beyond a doubt that the proper Defendant in this action is the Department of Justice.[1]  Therefore, the Department of Justice should be named as the sole Defendant in this action and the individually named Defendants should be dismissed.

## II. PLAINTIFF'S COMPLAINT IS NOT TIMELY.

Plaintiff next contends that Defendants' argument that his Privacy Act claim has been brought beyond the two-year statute of limitations and thus is untimely is incorrect. According to Plaintiff, because the district court allegedly ruled that he was not a "career offender" in December 1992, "it [is] simply not reasonable to presuppose the mere preparation in October 1992 of Ingram's [pre-sentence report ("PSR")] and Ingram subsequent sentencing in December, 1992, suffice as sufficient to reasonably draw an inference Ingram knew or should have known his PSR would still contain erroneous information after he was sentenced . . . ." Pl.'s Opp'n at 6. Plaintiff believes "it is more reasonable to conclude he was not aware in 1992 of the erroneous information in his PSR . . ." and "a[ ] reasonabl[e] inference could be drawn from those facts, [that] Ingram only became aware after the BOP erroneously classified Ingram [as a] Career Offender in scoring his custody

---

[1] Instead of addressing the cases cited by the Defendants, Plaintiff cites to Grandison v. Warden, Maryland House of Correction, 423 F. Supp. 112 (D. Md. 1976) in support of his argument that the individual defendants are properly named in this action. Grandison involved a habeas corpus proceeding in which the district court ordered expungement of the petitioner's state criminal conviction. Id. at 113. In holding that its expungement order extended to other law enforcement agencies, the court noted that petitioner's naming of the warden was "solely because he is petitioner's custodian. He is simply a figurehead who represents the interests of the State." Id. at 116. However, as Grandison does not concern an action brought pursuant to the Privacy Act, which specifically states that an action must be brought against "the agency," 5 U.S.C. § 552a(g)(1), it sheds no light on the issue before this Court.

classification points . . . in 2005." Id. at 6. Notably, not once in his pleadings does Plaintiff contend that the first time he learned of his allegedly improper classification was in 2005. Nor does Plaintiff's affidavit state the precise date on which he learned about the allegedly erroneous information, and how he came to learn about that information. See Affidavit of Walter Louis Ingram ("Ingram Aff.") ¶ 2 ("Once I learned of the erroneous information . . . I filed an initial complaint in 2005 . . . .").[2]

Plaintiff would have the court believe that it was not until 13 years after his sentencing that he became aware of his custody classification. Such a conclusion belies logic. While Plaintiff contends that the sentencing court ordered that he was not to be classified as a "Career Offender" he fails to set forth any rationale regarding why the pre-sentence report was not ordered to be amended at that time. Nor does Plaintiff indicate why he failed to ensure that it was amended, if indeed the Court ordered that this be done. In fact, if this had been ordered by the Court, Plaintiff no doubt would have sought to enforce that order rather than bring a collateral action seeking amendment of his pre-sentence report.

These facts support a finding that Plaintiff has failed to present his action timely in this Court. Plaintiff, who contends to be very concerned with his custody classification, offers no explanation for his failure to inquire about his custody classification for over 13 years after he was sentenced.[3] Although he contends, in a footnote, that equitable tolling may be available to him, Pl.'s

---

[2] Defendants note that page two of Plaintiff's affidavit is missing from the document that was filed with the Court. Thus, Defendants are not able to discern what additional facts are set forth in the affidavit.

[3] Notably, it appears that since his sentencing in 1992, Plaintiff has filed several lawsuits challenging his confinement. See Exhibit 1 (Pacer Print-out of cases involving Walter Louis Ingram). Yet Plaintiff makes no mention of these prior lawsuits nor indicates why knowledge of

Opp'n at 5, n.1, Plaintiff fails to acknowledge that such tolling is not available to litigants who do not diligently pursue their rights. Equitable tolling is only available to a plaintiff where "despite all due diligence, he is unable to obtain vital information bearing on the existence of his claim." Currier v. Radio Free Europe/Radio Liberty, Inc., 159 F.3d 1363, 1367 (D.C. Cir. 1999). Plaintiff fails to offer any justification for his failure to investigate his custody classification for over 13 years. Thus equitable tolling is not available to him to salvage his untimely Privacy Act claim.

### III.   THE PRIVACY ACT CANNOT PROVIDE THE RELIEF PLAINTIFF SEEKS.

Previously, Defendant set forth several arguments in support of a finding that the Privacy Act does not, and cannot, provide Plaintiff the relief he seeks. Plaintiff fails to sufficiently oppose these arguments.

First, Plaintiff contends that Defendants' argument that the Privacy Act does not afford him the relief he seeks, i.e., correction of his pre-sentence report, is false. Pl.'s Opp'n at 7. According to Plaintiff, Thomas v. United States Parole Comm'n, No. Civ.A. 94-0174, 1994 WL 487139, at *6 (D.D.C. Sept. 7, 1994), wherein the court held that challenges to a pre-sentencing report should be made to the sentencing court, is "completely distinguishable [from Plaintiff's case because [the plaintiff in Thomas had both a reason [and] an opportunity to challenge the accuracy of his pre-sentence report contents." Pl.'s Opp'n at 7. Plaintiff, on the other hand, contends that he "had no reasons to challenge his PSR because the trial judge that sentenced Ingram ruled he was not a

---

his presentence report's alleged error could not have been discovered previously. Furthermore, Plaintiff does not address Defendants' contention that he has previously sought, and was denied, the relief he seeks here in this Court thus raising res judicata implications. Defs.' Mot. at 7 n.3; see also United States v. Ingram, 178 Fed. Appx. 206 (4th Cir. 2006) ) (affirming "district court's order denying [Plaintiff's] motion for resentencing and to correct erroneous information in the presentence investigation report. The district court was without jurisdiction to do either.").

4

'Career Offender . . . ." Id. Yet, Plaintiff does not explain why, if the Court ordered that his pre-sentence report be amended, which was created prior to the time of his sentencing, he did not at some point prior to 13 years later, verify that this had been done.[4] See, e.g., Pl.'s Opp'n at 10 (noting that PSR was created prior to sentencing). Therefore, like the plaintiff in Thomas, Plaintiff had a reason to challenge and/or verify the accuracy of the presentence report (i.e., a purported court order requiring that the report be amended).

Second, as Defendants previously argued, the Bureau of Prisons ("BOP") has clearly exempted the relevant system of records (i.e., the Inmate Central Records System ("ICRS")) from the provisions of the Privacy Act. See 28 C.F.R. § 16.97(a). Thus, Plaintiff is barred from seeking amendment of his PSR pursuant to the Privacy Act. See White v. United States Probation Office, 148 F.3d 1124, 1125 (D.C. Cir. 1998) ("Under [the pertinent] regulations . . . presentence reports and BOP inmate records systems are exempt from the amendment provisions of the [Privacy] Act. . . . Accordingly, White is barred from seeking amendment of his presentence report."). See also Thurston v. United States Bureau of Prisons, No. Civ.A. 03-2629, 2005 WL 3987714, at *1 (D.D.C. Aug. 4, 2005) ("[T]he BOP has properly exempted its Inmate Central Record System, where presentence reports are maintained, from the Privacy Act's amendment requirements."). In his opposition, while contending that this argument by Defendants "borders on the line of being

---

[4]Plaintiff's reliance on Sellers v. Bureau of Prisons, 959 F.2d 307 (D.C. Cir. 1992) is without merit. Pl.'s Opp'n at 8-9. There, the court concluded that because the challenged information contained in the plaintiff's files "was capable of being verified, the agency did not satisfy the requirements of the Privacy Act simply by noting in his files that he disputed some of the information the files contained." Id. at 312. The Sellers court, therefore, merely held that the Privacy Act required that the agency do something more than note that the plaintiff disputed the information in his pre-sentence report and other files. Id. It did not address the issue presented here of whether the agency had the authority to amend those reports, which is the relief Plaintiff seeks in the case sub judice.

completely frivolous," Plaintiff fails to cite one case holding to the contrary, or to even address the cases cited by Defendants. Pl.'s Opp'n at 11. Thus, Plaintiff has wholly failed to refute Defendants' argument on this point.

Third, Defendants contended that even if he could assert a Privacy Act claim, Plaintiff could not satisfy the elements necessary for maintaining that claim.[5] Plaintiff contends that use of the erroneous information in his presentence report "was tantamount to an adverse determination, because that document was inconsistent with the judgment of the sentencing court . . . ." Pl.'s Opp'n at 13. As a result, Plaintiff contends that he was denied "transfer to a Community Confinement Center, furloughs, etc. . . . ." Plaintiff contends that Defendants' citation of Supreme Court precedent holding that an inmate does not have any constitutional right to a particular security classification after he is incarcerated is not persuasive as those cases typically involve inmates being placed in confinement or transferred to different institutions. Pl.'s Opp'n at 11-12. While the cases are not so limited, Plaintiff's attempt to distinguish these cases falls flat because he fails to provide any case law holding that inmates do in fact have a constitutional right to a particular security classification.

Plaintiff relies upon Woodall v. Federal Bureau of Prisons, 432 F.3d 235 (3d Cir. 2005). Woodall has no applicability to this case. In Woodall, the court held that a prisoner could invoke habeas relief to challenge BOP regulations that limited a prisoner's placement in community confinement to the lesser of ten percent of the prisoner's total sentence or six months. Id. at 237.

---

[5]To assert a Privacy Act claim, Plaintiff must show that (1) there was an adverse determination; (2) that the agency failed to maintain plaintiff's records with the degree of accuracy necessary to ensure fairness in the determination made; (3) that the agency's failure to do so was the proximate cause of the adverse determination, and (4) that the agency acted intentionally and willfully. Armstrong v. Bureau of Prisons, 976 F. Supp. 17, 21 (D.D.C. 1997).

In reaching its determination that habeas relief would be available, the court noted that the inmate's challenge to BOP's regulations that pertained to the ability of inmates to be placed in a community center prior to release was a proper challenge to the "execution" of the inmate's sentence. Id. at 243-44. The court did not hold that inmates had a constitutional right to such placement or to any particular security classification.[6] And indeed, case law does not support such a finding. See Defs.' Mot. at 10; see also Harbin-Bey v. Rutter, 420 F.3d 571 (6th Cir. 2005) (holding that inmate did not have "a constitutional right to be placed in a specific security classification[,] and thus he could not seek recourse for being classified as a member of a "security threat group.") (citing Moody v. Daggett, 429 U.S. 78, 88 n.9 (1976)).

Plaintiff cannot establish a Privacy Act claim for yet another reason – he cannot show that BOP acted intentionally or willfully. Rather, Plaintiff conclusorily states that "the agencies acted intentionally and willfully" and argues that this contention is supported by a letter attached as an exhibit to his complaint, wherein the United States Probation Office stated it would not amend Plaintiff's PSR. Pl.'s Opp'n at 13. However, the letter to which Plaintiff refers, from John W. Skozilas, Supervising Probation Officer, merely states that Mr. Skozilas had "no authority to change the report. The report was ordered by the Court, and only the Court has the authority to order a modification of the report." Complaint, Appendix E, 2 of 2. This hardly suffices as evidence that Defendants have acted intentionally and willfully. Most telling, despite attaching various letters to his Complaint, Plaintiff does not attach the alleged order, or the relevant court transcript, that he states mandates that his presentence report be amended. Thus he has not demonstrated that the

---

[6]Notably, Plaintiff does not address Defendants' contention that his claim that he was adversely affected by the denial of placement in a community confinement center may now be moot in light of his assignment to a Residential Re-entry Center ("RRC"). Defs.' Mot. at 11 n.4.

Defendants have allegedly violated such an order. Cf. Martinez v. Bureau of Prisons, 444 F.3d 620, 624 (D.C. Cir. 2006) (holding that appellant could not establish that the United States Probation Office acted willfully in refusing to correct his records because, "[c]ontrary to appellant's implicit assumption, the excerpt from the transcript attached to his complaint does not show that a court has ordered the USP[O] to delete data from its records."). Plaintiff has pointed to no evidence that could establish a finding of intentional conduct or willfulness in this case and thus he cannot establish a viable Privacy Act claim.

Finally, Defendants argued that Plaintiff's claims should be dismissed because Plaintiff has failed to exhaust his administrative remedies pursuant to the Prison Litigation Reform Act of 1995, as amended, 42 U.S.C. § 1997e(a) ("PARA"). In opposition, Plaintiff does not dispute that he has not at any time exhausted his administrative remedies.[7] Rather, he asserts that he did in fact file a complaint, and was told by prison officials that "there was no need to pursue the complaint because [Warden Sniezek's] office would resolve the matter by forwarding a letter to the Probation Office . . . ." Pl.'s Opp'n at 14.[8] Plaintiff contends that he was not informed that he had a "right to pursue further administrative review . . . ." and that, as a result of the September 13, 2005 letter informing him that his presentence report could not be amended, he was led to believe he had "no further

---

[7] Plaintiff's argument that the Bingham affidavit is "improper" because "it is not based on personal knowledge of the events giving rise to the underlying litigation[,]" is without merit. Pl.'s Opp'n at 14. Ms. Bingham personally reviewed BOP's administrative remedy records and determined that Plaintiff never exhausted his administrative remedies concerning the claims in his current complaint. Bingham Aff. ¶¶ 4-5. Plaintiff does not dispute that he has failed to exhaust his administrative remedies.

[8] A letter was indeed forwarded to the Probation Office concerning Plaintiff's complaint. See Complaint, Letter to William F. Henry, Chief, United States Probation Office from T.R. Sniezek, Warden, dated May 3, 2005.

administrative remedies." Id. Plaintiff contends that Defendants should be precluded from asserting a failure to exhaust defense because they engaged in "affirmative misconduct" designed to "prevent[ ] Ingram from exhausting in [a] normal way, because they destroyed his complaints, and deceived Ingram into believing they would resolve the matter, and Ingram need not pursue the matter any further." Id. at 15.

Plaintiff's argument is essentially that Defendants are equitably estopped from asserting a failure to exhaust argument. However, such equitable relief is not warranted. "Equitable estoppel . . . prevents a defendant from asserting untimeliness where the <u>defendant</u> has taken active steps to prevent the plaintiff from litigating in time[.]" See Currier v. Radio Free Europe/Radio Liberty, Inc., 159 F.3d 1363, 1367 (D.C. Cir. 1998) (citations omitted) (emphasis in original). "Courts, including the D.C. Circuit, have emphasized that the defendant must engage in affirmative misconduct in order for equitable estoppel to apply." Moore v. Chertoff, 424 F. Supp. 2d 145, 150 (D.D.C. 2006) (citations omitted); see also Cristwell v. Veneman, 224 F. Supp. 2d 54, 60 (D.D.C. 2002) ("For a plaintiff to successfully assert equitable estoppel, when it is alleged that an untimely filing was the result of conduct by the defendant, the plaintiff must be able to point to some type of 'affirmative misconduct' or misleading information regarding the filing deadline by the defendant) (citation omitted).

Plaintiff cannot identify any "affirmative misconduct" by the Defendants that "actively misled" him about his rights and thus he cannot invoke equitable estoppel. See, e.g., Taylor v. United States Treasury Dep't, 127 F.3d 470, 474 (5th Cir. 1997) (holding that equitable estoppel was not available to litigant who argued that the Internal Revenue Service failed to inform him of the defects in his Privacy Act request because there was no affirmative misconduct by the government).

While Plaintiff attempts to lay blame on others for his failure to exhaust his administrative remedies, he does not contend that he was ever directly told that there was no further appeals process. Nor does he contend that he was unaware of any such process. Nor does he explain why, once he received the September 13, 2005 letter, he did not even attempt to further pursue his administrative remedies, but instead, decided to file his complaint in this Court almost ten months later. The Bingham affidavit clearly establishes that Plaintiff did not exhaust his administrative remedies and Plaintiff has done nothing to refute this fact. Accordingly, dismissal is warranted.

### IV.    ABSENT DISMISSAL, TRANSFER IS WARRANTED.

Defendants previously contended that while dismissal of this action is warranted, if the Court did not deem dismissal appropriate, transfer of this action is proper. This is so because although the Privacy Act permits an action to be brought in the District of Columbia, 5 U.S.C. § 552a(g)(5), pursuant to Title 28 U.S.C. § 1404(a), even if a case is filed in a jurisdiction where venue properly lies, "a court may transfer the case to any other district where it might have been brought '[f]or convenience of the parties and witnesses, [and] in the interest of justice." Boers v. United States, 133 F. Supp. 2d 64, 65 (D.D.C. 2001) (quoting 28 U.S.C. § 1404(a)) (other citations omitted). While not disputing that 28 U.S.C. section 1404(a) permits transfer of this action, Plaintiff contends that Defendants have not sufficiently proved that transfer pursuant to this section is warranted. Pl.'s Opp'n at 16. According to Plaintiff, the Defendants "must actually set forth facts that there exist[s] a warrant [sic] of convenience of the witnesses . . . [etc.]" Id.

Plaintiff's argument is unsound. Defendants clearly asserted that transfer in this case is warranted because none of the persons with knowledge of the events alleged in Plaintiff's complaint, including Plaintiff himself, are located in this District. It is not apparent what further "proof"

Plaintiff seeks. Rather, the facts here readily demonstrate to the Court why transfer is warranted: The records Plaintiff seeks to amend are located in Maryland; as is the court that sentenced Plaintiff and from whence came the alleged "order" that the records be amended. Notably, while contending that Defendants have not sufficiently "proved" that transfer to Maryland is appropriate, Plaintiff does not set forth <u>one</u> reason for maintaining this action in this Court. Specifically, he provides no arguments as to why it would be more convenient for him to litigate his case in this forum when he does not reside here and when the witnesses with direct knowledge of his claims reside in Maryland. For these reasons, Plaintiff's choice of forum is entitled to less weight when, as here, that forum is outside of Plaintiff's home jurisdiction. <u>Stewart v. Capitol Area Permanente Medical Group</u>, 720 F. Supp. 3, 5 (D.D.C. 1989).

## CONCLUSION

For the reasons set forth above, and in Defendants' initial motion for dismissal, or alternatively, for transfer, Plaintiff's complaint should be dismissed with prejudice. Alternatively, this matter should be transferred to the appropriate United States District Court for the District of Maryland.

Respectfully submitted,

   /s/ Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

   /s/ Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney

   /s/ Michelle N. Johnson
MICHELLE N. JOHNSON, D.C. BAR # 491910

        Assistant United States Attorney
        United States Attorney's Office
        Civil Division
        555 4th Street, N.W. – Room E4212
        Washington, D.C. 20530
        (202) 514-7139

        COUNSEL FOR DEFENDANT

Of Counsel:

Michael S. Romano
Assistant Regional Counsel
United States Department of Justice
Federal Bureau of Prisons
Northeast Regional Office
U.S. Customs House
2nd and Chestnut Streets
Philadelphia, PA 19106

**CERTIFICATE OF SERVICE**

      I hereby certify that the foregoing Defendants' Reply in Further Support of Their Motion to Dismiss, or in the Alternative, to Transfer Venue, was mailed by depositing a copy of it in the U.S. Mail, first class postage prepaid, addressed to:

Walter Louis Ingram
R28648-037
Community Corrections Center
4601 East Monument Street
Baltimore, MD 21205

on this 23rd day of April, 2007.

                                              MICHELLE N. JOHNSON